**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEONARD K. BRUNDAGE et al**. | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 00-4549** |
| | : | |
| **INTERNATIONAL ASSOCIATION** | : | |
| **OF BRIDGE, STRUCTURAL AND** | : | |
| **ORNAMENTAL IRONWORKERS,** | : | |
| **LOCAL #401 et al.** | : | |

**Diamond, J.**                                                                          **October 24, 2007**

## M E M O R A N D U M

Plaintiffs Leonard K. Brundage, Walter Franklin, and Christian Williams bring racial discrimination claims against the International Association of Bridge, Structural and Ornamental Ironworkers, Local 401 and various structural steel contractors. 42 U.S.C. § 2000e et seq. ("Title VII); 42 U.S.C. § 1981; 43 Pa. Stat. Ann. § 955 et seq. ("PHRA"). Defendants have moved for summary judgment, arguing that the undisputed facts do not support Plaintiffs' claims. I grant Defendants' motions in part.

## I.    LEGAL STANDARDS

Upon motion of any party, summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Summary judgment may be granted only if the movant shows that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that

issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it could affect the result of the suit under governing law.  Id.

In deciding whether to grant summary judgment, the district court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.  Hugh v. Butler County Family YMCA, 418 F.3d 265 (3d Cir. 2005).  If, after viewing all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate.  See Celotex, 477 U.S. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

A defendant seeking summary judgment must show that the record evidence is insufficient to sustain an element of the plaintiff's claim.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).  To defeat summary judgment, a plaintiff must go beyond unsupported allegations and support each essential element with concrete evidence in the record.  Id. at 322-23; Jones v. United Parcel Serv., 214 F.3d 402 (3d Cir. 2000).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted).  See also Berckeley Investor Group v. Colkitt, 455 F.3d 195 (3d Cir. 2006) (summary judgment is essentially "put up or shut up time") .

## II.    BACKGROUND

### A.    Procedural History

In 1975, three African-American ironworkers brought a class action against the Union and a group of structural steel contractors, alleging racial discrimination.  Earline Ray, et al. v. Local No. 401, et al., Civil No. 75-3657 (E.D. Pa. 1975).  The matter was assigned to the late, Honorable Clifford Scott Green.  In 1982, the Parties entered into the "Ray Consent Decree,"

establishing the goal of assigning 18 percent of available work to minorities in the ironworking industry. The Ray Consent Decree was set to dissolve in 1987, but Judge Green extended it until 1997, when he vacated it, finding that the Union and the Contractors were in substantial compliance. (Compl. at 19.)

On January 23, 1996, Plaintiffs, who are African-American ironworkers and Union members, filed charges with the EEOC against Defendants; the Commission issued Determination and Right to Sue Letters on May 25, 2000. (Pl. Ex. A.)

Plaintiffs filed their Class Action Complaint on September 7, 2000 on behalf of all African-American structural ironworkers who were Union members. (Compl. at 5.) Defendant Contractors include A.C. Dellovade, Delaware Valley Erectors, Inc., Northwest Erectors, Inc., Roma Steel, Inc., Anvil Construction Company, Inc., Morris Kreitz and Sons, Inc., and Cornell & Company, Inc.

Plaintiffs alleged that Defendants: (1) failed to hire and promote black ironworkers; (2) failed to provide equal work to those workers; and (3) did not provide equal access to health, welfare, and retirement benefits to those workers. (Compl. at 25-27.) Plaintiffs estimated that the class comprised approximately 200 persons. (Id. at 12.)

Judge Green denied Plaintiff's Motion for Class Certification on May 19, 2005, finding that Plaintiffs were inadequate class representatives. (Doc. No. 99.) Plaintiffs did not seek either to substitute new representatives or to appeal the dismissal. See Fed. R. Civ. P. 23(f). Rather, they proceeded individually against Defendants. On June 8, 2007, this case was reassigned to me. On July 26, 2007, Defendants moved for summary judgment.

3

**B.     Background**

In summarizing the record, I have set out those facts that are undisputed, and construed them in the light most favorable to Plaintiffs.  I have disregarded those factual allegations that Plaintiffs make without any evidentiary support.  See Celotex, 477 U.S. at 322-23; Jones, 214 F.3d at 407.  I have accepted as true all other factual allegation made by Plaintiffs and construed those allegations in the light most favorable to Plaintiffs.

**1.     Plaintiffs' Employment And The Ironworking Industry**

Plaintiffs became ironworkers in the 1970s.  (9/1/04 Brundage Dep. at 18; 9/1/04 Franklin Dep. at 10; 9/2/04 Williams Dep. at 11.)  Plaintiff Franklin retired in 2003.  (9/1/04 Franklin Dep. at 12.)  Plaintiff Brundage retired in 2004.  (9/1/04 Brundage Dep. at 14-15.)  Plaintiff Williams retired in 2004.  (9/2/04 Williams Dep. at 31.)

Ironworkers find employment in a number of ways.  (Dougherty Aff. at ¶ 5.)  Some employers maintain a steady work force and hire additional workers as needed.  (Id.)  Thus, many iron working jobs are temporary, lasting only until a particular project is completed.  (9/1/04 Brundage Dep. at 51.)  Employers may hire temporary workers directly, relying both on individuals who have worked for them in the past and on individuals that call on the employer to get hired.  (Dougherty Aff. at ¶ 5; 9/1/04 Brundage Dep. at 51, 99.)  Employers may also hire from the Union Hiring Hall.  (Dougherty Aff. at ¶ 6.)

**2.     The Contractors Against Whom Plaintiffs Have Chosen To Proceed**

In their Class Action Complaint, Plaintiffs named other structural steel contractors as Defendants: B&B Maintenance, Coastal Steel Construction Co., East Coast Hoist, Econ Designs, Flour City Architectural Metals, Interstate Ironworks Corp., Jenna Construction Co., Lagoni

4

Erection, J.C. Lindstrom and Co., MacGregor, and Steel Suppliers.  Plaintiffs apparently sought employment from these Contractors.  It also appears that Plaintiffs either never served their Complaint on these Defendants, or have abandoned their claims against them.  Accordingly, I will discuss only the claims against those Defendants that Plaintiffs have not abandoned.

### 3.      Defendant Union

The Union Hiring Hall functioned as a forum in which ironworkers could find temporary employment.  Employers would call the Hiring Hall to request workers.  The Union business agent would call out these  jobs to assembled Union members, and assign the work based on the job skill required.  (Dougherty Aff. at ¶¶ 5-6.)  Employers sometimes sought someone skilled in a particular ironwork specialty.  (Id.)  Ironworkers, in turn, often chose not to volunteer for a job because of the type of work offered, the job's duration, or the job's location.  (Id. at ¶¶ 14, 18.)

The business agent called out each job twice, then asked interested workers to raise their hands.  (Id. at ¶ 8.)  If more than one worker raised his hand for a particular job, the individual that had been out of work the longest was chosen.  (Id.)  The Union required workers to sign a bound book when they entered the Hall; the Union noted in the book the names of those workers hired.  (Id. at ¶¶ 7, 8.)

The Union continued voluntarily to comply with the terms of the Ray Consent Decree after it was dissolved, and continued to meet the goals for minority employment.  (Id. at ¶ 3.) The Union continued to use hiring safeguards – such as the sign-in book – created under the Ray Consent Decree.  (Id. at ¶ 3, 7.)

Because ironwork positions are so often temporary, the Union usually did not get involved when a worker was laid off.  (Dougherty Aff. at ¶ 11.)  The Union's collective

bargaining agreement did not obligate employers to provide workers with any certain duration of work.  (Id.)

Each Plaintiff frequently visited the Hiring Hall and found work on some of his visits. (9/1/04 Brundage Dep. at 36; 3/9/07 Williams Dep. at 154; 9/1/04 Franklin Dep. at 16.)   Plaintiff Williams testified that he did not visit the Hall as often as he should have, but that he got a substantial amount of work at the Hall.  (3/9/07 Williams Dep. at 154.)   Plaintiffs were never the only people in the Hall who failed to find work.  (3/8/07 Brundage Dep. at 96; 3/9/07 Williams Dep. at 56; 3/8/07 Franklin Dep. at 64.)

### 4.      Defendant Dellovade

Located in Canonsburg, Pennsylvania, Dellovade specialized in installing building facades.  (Riley Dep. at ¶ 17.)  Because Dellovade operated in various jurisdictions, it entered into an agreement with the International Union that allowed it to work in any U.S. jurisdiction without concluding a separate agreement with each local union.  (Id. at 10.)  Rather than traveling with its own workforce, Dellovade brought only its supervisory personnel, and informed the local union of a project's start date and the number of ironworkers needed.  (Id. at 22.)  Dellovade hired workers exclusively through the Hiring Hall.  (Id. at 12.)

Plaintiff Franklin unsuccessfully sought work at Dellovade in person and by letter, although the letter was returned unopened.  (9/1/04 Franklin Dep. at 103-106; 3/9/07 Franklin Dep. at 39.)  Plaintiff Brundage unsuccessfully sought work in person from Dellovade on one occasion.  (3/8/07 Brundage Dep. at 167-69.)  Plaintiffs agreed that Dellovade hired ironworkers exclusively through the Hall.  (9/1/07 Brundage Dep. at 127; 3/9/07 Williams Dep. at 117; 9/1/04 Franklin Dep. at 104.)

Plaintiffs Brundage and Williams withdrew their EEOC charges against Dellovade. (Flamm Aff., Ex. A.)

### 5.   Defendant Morris Kreitz

Morris Krietz was an industrial contractor based in Reading, Pennsylvania.  It did little work in the Philadelphia area.  (Jacobs Dep. at 12-13.)  Because it did not erect steel, Morris Kreitz employed ironworkers infrequently, and when it did so, it hired exclusively from the Hiring Hall.  (Id. at 13-17.)  Thus, like Dellovade, Morris Kreitz never selected workers, but merely informed the Hall of the number of workers it needed and their required skills.  (Id. at 21-24.)

Plaintiff Brundage could not recall if he worked for Morris Kreitz more than once. (9/1/04 Brundage Dep. at 67.)  Plaintiff Williams sent a letter to Morris Kreitz applying for work, but never received a job.  (9/2/04 Williams Dep. at 21.)  Plaintiffs do not claim that Morris Kreitz refused to hire them when referred by the Hiring Hall.

Plaintiffs Williams and Franklin withdrew their EEOC charges against Morris Kreitz. (Flamm Aff., Ex. A.)

### 6.   Defendant Anvil

Anvil was a specialty contractor that erected pre-engineered buildings.  (Andreassi Aff. at ¶ 1.)  These projects did not require traditional ironwork, such as welding, but instead required sheeting and connecting work.  (Id. at ¶ 5.)  Anvil sought to hire workers experienced in sheeting – an ironworking specialty skill –  and often looked to other trade unions because many Union ironworkers were not experienced sheeters.  (Id. at ¶¶ 6-8.)  Connecting is also a specialty skill; it is performed at elevated heights and is physically demanding.  (Id. at ¶ 11.)

7

Plaintiffs Williams and Brundage each testified that they sent letters to Anvil seeking work, but were not hired.  (3/9/07 Williams Dep. at 154; 3/8/07 Brundage Dep. at 160-63.) Although Anvil retains records of all employment requests, it could find no record of Plaintiffs' letters.  (Andreassi Aff. at ¶ 13.)

Plaintiff Brundage also testified that he applied for a job in person at Anvil's Philadelphia project at 77th Street and Holstein Avenue, where he spoke with a foreman named Mathis. (3/8/07 Brundage Dep. at 161-62.)  It is undisputed, however, that Anvil's records show that it never worked on this project and never employed a foreman named Mathis.  Rather, the records show that another contractor, Lotz, performed this project.  (Andreassi Aff. at ¶ 15.)

Plaintiffs Brundage and Franklin did some sheeting and connecting work, but did not have expertise in these areas.  (3/1/04 Brundage Dep. at 21-22, 26; 3/8/07 Franklin Dep. at 13-15; 9/1/04 Franklin Dep. at 15.)  Plaintiff Williams had sheeting experience.  (9/2/04 Williams Dep. at 13.)

Plaintiffs Brundage and Franklin withdrew their EEOC charges against Anvil.   (Flamm Aff., Ex. A.)

### 7.     Defendant Bensalem

Plaintiff Williams sent a letter to Bensalem seeking work, but was not hired.  (3/9/07 Williams Dep. at 13-33.)  Plaintiff Franklin applied for work several times with Bensalem; he was hired on one occasion, and was laid off when the work was completed.  (9/1/04 Franklin Dep. at 25-26.)  Plaintiff Brundage was laid off from a job with Bensalem without being given any reason.  (3/8/07 Brundage Dep. at 171-72.)  Bensalem has stated that it hired Plaintiffs whenever work was available.  (Grossi Aff. at ¶ 3.)

Plaintiffs Brundage and Williams withdrew their EEOC charges against Bensalem. (Flamm Aff., Ex. A.)

### 8.      Defendant Roma

Plaintiff Brundage worked for Roma "quite a few" times.  (3/8/07 Brundage Dep. at 80-81.)  He was turned down for work once and laid off from a job once after the foreman told him that there was no work.  (Id.)  Plaintiff Williams also worked for Roma several times, and was twice laid off.  On one occasion, he was the sole black worker on the project and the only worker laid off.  (9/2/04 Williams Dep. at 22-29; 3/9/07 Williams Dep. at 13-33.)  Roma has stated that it hired Plaintiffs whenever work was available.  (Giangiulio Aff. at ¶ 3.)

Plaintiffs Williams and Franklin withdrew their EEOC charges against Roma.   (Flamm Aff., Ex. A.)

### 9.      Defendant Northwest

Plaintiff Brundage worked for Northwest at the Philadelphia Zoo until the project was finished, and unsuccessfully sought work there on one additional occasion.  (3/8/07 Brundage Dep. at 77-80.)   Northwest has stated that it hired Plaintiffs whenever work was available. (Dachowski Aff. at ¶ 3.)

Plaintiffs Williams and Franklin withdrew their EEOC charges against Northwest. (Flamm Aff., Ex. A.)

### 10.      Defendant Delaware Valley

Plaintiff Williams sent a letter to Delaware Valley unsuccessfully seeking work.  (3/9/07 Williams Dep. at 153-54.)  Plaintiff Brundage worked for Delaware Valley at the Philadelphia Airport for four days, and was laid off after being told there was no more work.  (3/8/07

Brundage Dep. at 74-76.)  He also phoned Delaware Valley, unsuccessfully seeking work.  (Id.)

Delaware Valley has stated that it hired Plaintiffs whenever work was available.  (Lowenberger

Aff. at ¶ 3.)

Plaintiffs Williams and Franklin withdrew their EEOC charges against Delaware Valley.

(Flamm Aff., Ex. A.)

### 11.    Defendant Cornell

Plaintiff Williams "might have" raised his hand at the Hiring Hall for work with Cornell,

but he did not seek work there directly.  (3/9/07 Williams Dep. at 152-53.)  Plaintiff Franklin

worked for Cornell several times, and was laid off by the foreman on one occasion.  (9/1/04

Franklin Dep. at 45-46.)  Plaintiff Brundage worked for Cornell on several occasions.  (3/8/07

Brundage Dep. at 68-69.)  He was once laid off because there was no work left to perform.  (Id.)

On another occasion, he was fired after he left the job to get medication for headaches stemming

from an on-the-job injury.  (Id.)  Cornell has stated that it hired Plaintiffs whenever there was

work available.  (Shelton Aff. at ¶ 3.)

Plaintiffs Williams and Franklin withdrew their EEOC charges against Cornell.  (Flamm

Aff., Ex. A.)

## III.    DISCUSSION

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

Title VII makes it unlawful for a union:

(1) to exclude or expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000(e)-2(c).

Because Plaintiffs have provided no direct evidence of discrimination, I must analyze their claims under the McDonnell Douglas burden-shifting framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Sarullo v. United Postal Serv., 352 F.3d 789 (3d Cir. 2003).  A plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence.  Id.  Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employer's rejection."  Id.  The plaintiff must then establish by a preponderance of the evidence that the employer's given reasons are pretextual.  Id.

Plaintiffs' claims under § 1981 and the PHRA are analyzed under the same burden-shifting framework as their Title VII claim.  Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999).  Accordingly, I will first analyze the Title VII claim.

### A.    Title VII Discrimination Claim

Whether a plaintiff has established a *prima facie* case of discrimination is a question of law to be decided by the court.  Sarullo, 352 F.3d at 797.  The requirements for establishing a *prima facie* case vary, depending on whether the plaintiff  is alleging disparate treatment or disparate impact.  Although it appears that Plaintiffs allege only disparate treatment, I will also

discuss disparate impact.

### 1.     Disparate Impact

To establish a *prima facie* case of disparate impact discrimination, the plaintiff must

show that a specific employment practice used by the defendant has a disparate impact on a

protected class.  Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 642 (3d Cir. 1993).   It is

not enough simply to allege a disparity or point to a generalized policy.  Rather, the plaintiff must

demonstrate – usually with statistics – a causal nexus between the challenged practice and the

disparity.  Smith v. City of Jackson, 544 U.S. 228, 241 (2004); Watson v. Fort Worth Bank and

Trust, 487 U.S. 977, 994-95 (1988).

Plaintiffs compare the number of hours that they worked with those worked by the

"Average White Worker" over roughly a decade.  These statistics show only that in some years,

Plaintiffs worked fewer hours than the average white worker.  Plaintiffs do not point to any

specific employment practice or requirement that may have caused this disparity.  See Smith, 544

U.S. at 241 (quoting Watson, 487 U.S. at 994) (the employee "is responsible for isolating and

identifying the specific employment practices that are allegedly responsible for any observed

statistical disparities").  Finally, these "total hours" are not broken down by Defendant, and so do

not show whether individual Defendants are responsible for the disparity.

Because Plaintiffs have not specified a discriminatory employment practice, and have

shown no causal nexus between any employment practice and the statistical disparity, their claim

of disparate impact fails as a matter of law.

### 2.     Disparate Treatment

To make out a *prima facie* case of disparate treatment in hiring, a plaintiff must show

that: (1) he belongs to a protected class; (2) he was qualified for the position he sought; (3) he was subject to an adverse employment action despite his qualifications; (4) the employer continued to seek out similarly qualified individuals to fill the position in circumstances that raise an inference of discriminatory action. Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999). These criteria are intended to weed out the most obvious, non-discriminatory reasons for the employer's action: for instance, that the position sought was not filled for economic reasons. Sarullo, 352 F.3d at 797. Thus, the "central focus" is whether an employer is treating some people more favorably than others on account of race. Id. at 798.

Although Defendants concede that Plaintiffs are members of a protected class, they vigorously dispute whether Plaintiffs have satisfied the other three requirements.

### a.      Plaintiffs' Qualifications

All but one Defendant concedes that Plaintiffs were qualified to perform the jobs sought, and therefore satisfy the second prong of the Pivirotto test. Defendant Anvil alone argues that Plaintiffs were not qualified to perform the sheeting and connecting work for which it hired ironworkers. Although Plaintiffs do not profess to be experts in these areas, they performed some of this work. (9/1/04 Brundage Dep. at 25-28, 117-18; 9/1/04 Franklin Dep. at 26; 3/9/07 Williams Dep. at 72-73.) Taking the facts in the light most favorable to Plaintiffs, I am obligated to conclude that they were qualified to perform the jobs for which Anvil and the other Defendants hired.

### b.      Adverse Employment Actions

There is considerable confusion in the record respecting where Plaintiffs actually applied for work. For instance, although Plaintiff Franklin testified that he sent a letter to Dellovade

requesting employment, he also testified that it was returned to him unopened because it was incorrectly addressed.  (9/1/04 Franklin Dep. at 103-106; 3/9/07 Franklin Dep. at 39.)  Plaintiff Brundage could not recall whether he sought employment with Morris Kreitz outside the Hiring Hall.  (9/1/04 Brundage Dep. at 67.)  Plaintiff Williams admitted that he never sought employment with Northwest.  (3/9/07 Williams Dep. at 28.)

Obviously, if a Plaintiff never sought to work for a particular Defendant, that Defendant could not have taken an adverse employment action against him.  Taking the evidence in the light most favorable to Plaintiffs, however, it appears that at least one Plaintiff unsuccessfully sought work from every Defendant Contractor.  (3/8/07 Brundage Dep. at 68-69, 77-81, 160-63, 167-69; 9/2/04 Williams Dep. at 21; 3/9/07 Williams Dep. at 153-54; 9/1/04 Franklin Dep. at 25-26.)

### c.      Inference of Discriminatory Action

Plaintiffs must establish that Defendants continued to seek out applicants with similar qualifications in circumstances that create an inference of discrimination.  Sarullo, 352 F.3d at 797.  Although the showing required here can vary, plaintiffs often make out an inference of discrimination with evidence that an employer ultimately hired someone outside the protected class or treated that person more favorably.  Pivirotto, 191 F.3d at 357; Bullock v. Children's Hosp. of Phila., 71 F. Supp. 2d 482, 487 (E.D. Pa. 1999).  A plaintiff's subjective belief that race played a role in an employment decision is not, alone, sufficient to establish an inference of discrimination.  See Jones, 214 F.3d at 407 (plaintiff cannot rely on unsupported allegations at summary judgment).  For instance, in Sarullo, the Third Circuit held that the plaintiff did not make a causal connection between his membership in a protected class and his employer's failure to rehire him: in support he offered only his own sworn statement that most of his co-workers

14

knew he was Native American and made derogatory comments to him.  Sarullo, 352 F.3d at 798.

See also Williams McCoy v. Starz Encore Group, No. Civ. A. 02-5125, 2004 WL 356198, at *8

(E.D. Pa. Feb. 5, 2004) (the plaintiff's belief that she was the victim of discrimination, without

more, is insufficient to make out discriminatory action).

Even construing the record as favorably to Plaintiffs as I reasonably can, it is apparent

that, in all but one instance, they cannot make out a *prima face* case of discrimination because

they offer little more than their own beliefs that Defendants must have discriminated against

them.

**Defendant Union**

Plaintiffs' allegation that they were repeatedly passed over in the Hiring Hall in favor of

white workers – if supported with evidence – could certainly create an inference of

discrimination.  Plaintiffs fail to provide any evidentiary support, however.  See Kolodij v.

Consol. Rail Co., No. 97-5620, 1999 WL 744447 (E.D. Pa. September 23, 1999) ("the opposing

party must adduce more than mere allegations" to satisfy the fourth Pivirotto prong).  Plaintiffs

offer their own deposition testimony that they were passed over for jobs, but do not anywhere say

that white workers received these jobs.  For example, Plaintiffs cite to the following portion of

Mr. Franklin's deposition:

| | |
|---|---|
| **Q. (Defense Counsel)** | How was the union not fair to you Mr. Franklin? |
| **A. (Plaintiff Franklin)** | Because when I put – when I put up my hand they don't call on me.  They don't call me, they point over there and call somebody else. |
| **Q. (Defense Counsel)** | Can you give a specific example of when that happened? |
| **A. (Plaintiff Franklin)** | That happened all during my – all during my years with the local.  All during my years with the local. |

(3/8/07 Franklin Dep. at 65.)

Although Plaintiffs cite to other portions of their depositions, they there testified only that they were not hired or that they were laid off, and not that the Union passed them over in favor of white applicants.  (9/1/04 Brundage Dep. at 35-36, 48, 91, 95; 3/8/07 Brundage Dep. at 102; 3/8/07 Franklin Dep. at 54, 64-65, 73-76; 9/2/04 Williams Dep. at 44-47.)  Absent Plaintiffs' testimony that white workers were more favorably treated, there is no causal nexus between Plaintiffs' minority status and the adverse employment actions they suffered.  See Iverson v. City of Phila., 213 Fed. Appx. 115, 120 (3d Cir. 2007); Jones, 214 F.3d 402 (3d Cir. 2000).

Plaintiffs also argue that the statistical evidence I discussed earlier and an EEOC Determination Letter are sufficient to create an inference of discrimination.  Once again, the aggregate statistics Plaintiffs offer – showing that during some years they worked fewer hours than the average white worker –  do not create an inference of discrimination.  It is undisputed that the Hiring Hall does not account for all ironwork employment. (Dougherty Aff. at ¶ 5; 9/1/04 Brundage Dep. at 51, 99.)   Some workers directly contact contractors or are permanently employed by contractors.  (Id.)  In these circumstances, Plaintiffs' statistics – which do not break down whether those white workers who averaged more hours obtained their work from the Hiring Hall – are insufficient to show discriminatory action by the Union.

Finally, although I may consider the EEOC's Determination Letter at summary judgment, that, too, does not create a disputed issue of material fact.  First, the Determination Letter contains primarily hearsay statements that would be inadmissible at trial, and so cannot create a triable issue of fact.  See Philbin v. Trans Union Corp, 101 F.3d 957, 961 n.1 (3d Cir. 1996) (inadmissible hearsay cannot be considered at summary judgment); see also Miller v. Field, 35

16

F.3d 1088, 1091 (6th Cir. 1994).  Moreover, the Letter includes no statements by named witnesses that the Hiring Hall passed over black workers to give jobs instead to white workers. Rather, the Letter provides Commission impressions – almost all of them unattributed – that discrimination occurred within the Union.  For instance, the Letter includes an unattributed statement that "nepotism has been the dominant factor" in Union hiring. (Doc. No. 123 Ex. A at 2.)  Yet, the great bulk of the discriminatory behavior discussed in the Letter is irrelevant to the claims of Plaintiffs: disparate promotion rates for minorities and non-minority apprentices and disparity in the naming of black and white foremen.  Thus, the EEOC's conclusion that discrimination occurred is insufficient to create a disputed issue of material fact.  Jackson v. Light of Life Ministries, 2006 WL 2974162 (W.D. Pa. Oct. 16, 2006); Mondero v. Salt River Project, 400 F.3d 1207, 1215 (9th Cir. 2005).

In sum, Plaintiffs have provided no evidence – not even their own testimony – to show racially discriminatory action by the Union.   Accordingly, I will grant the Union's motion for summary judgment.

**Defendant Contractors**

Plaintiffs have alleged that the Contractors hired white workers instead of Plaintiffs. (Doc. No. 123 at 14-17; 20-21; 25-26.)  Once again, however, Plaintiffs offer virtually no supporting evidence.  Again, Plaintiffs rely primarily on their own deposition testimony.  Yet, almost all the testimony offered includes only Plaintiffs' descriptions of Contractors either failing to hire them or laying them off; Plaintiffs did not testify that they were passed over in favor of white workers.  Moreover, Plaintiffs almost never testified that Defendants had work available when Plaintiffs sought it.  In the few instances where a Plaintiff mentioned work availability, the

testimony was vague and conclusory.  For example, in explaining how Delaware Valley Erectors

discriminated against him, Plaintiff Brundage stated:

| | |
|---|---|
| **A. (Plaintiff Brundage)** | Well, they had plenty of work a while back.  I think I worked, about, four days for them, but they had more work, and I called . . . over there. . . But I never – I never got on.  I never got on.  And some of these guys that I trained as a journeyman, and they were running work for foremen. |
| | * * * |
| **Q. (Defense Counsel)** | Were you laid off or fired? |
| **A. (Plaintiff Brundage)** | Laid off. |
| **Q. (Defense Counsel)** | Lack of work? |
| **A. (Plaintiff Brundage)** | That's what they say. |
| **Q. (Defense Counsel)** | Did it appear to you that there was lack of work there at that time? |
| **A. (Plaintiff Brundage)** | You always – let me say this: When you get in a hall, you always find out who has the work, who's working, what job is coming up, so you know if they got work coming up or not.  You know that just from conversation with other journeymen and some foremens [sic]. |

(3/8/07 Brundage Dep. at 68-69.)  The cited testimony of the other Plaintiffs is similarly vague

and conclusory, and also does not mention that white workers received more favorable treatment.

Plaintiff Williams alone testified that a particular Contractor – Roma – fired him in favor

of a white employee, and that additional work was available at the time of the lay-off.  (3/9/07

Williams Dep. at 16.)  As I explain below, however, because Williams abandoned his Title VII

claim against Roma before the EEOC, he may not prosecute it now.

Thus, even Plaintiffs' own testimony does not give rise to an inference of discrimination,

because, in all but one instance, Plaintiffs did not testify that Contractors treated white workers

more favorably.  Indeed, during Plaintiff Williams's deposition, counsel for the Contractors

noted this significant omission:

| **Q. (Defense Counsel)** | I don't want to hear about what happened to other African American workers.  I want to hear about what happened to Mr. Williams specifically this afternoon.  This is no longer a class action lawsuit.  We're focusing on the individual claims of you and the other plaintiffs.  Okay.  So this is a chance for you to tell the facts regarding your claim, Mr. Williams.  So I'm asking you very specifically how the union treated you differently than the white members.  So you gave me the example of the Roma job at the Inquirer. And I asked you very specifically, can you give me examples of how white people were treated differently with respect to the layoff? |
|---|---|
| **A. (Plaintiff Williams)** | You have to give me a minute.  I will come back to it when I think about it. |

(3/9/07 Williams Dep. at 45-46.)  Mr. Williams never offered the more specific testimony

requested.

   In these circumstances, Plaintiffs have provided little more than their personal belief that

discrimination occurred, and so cannot make out a *prima facie* case of discrimination.  See Iyer

v. Everson, No, 06-1539, 2007 WL 2220446 (3d Cir. Aug. 3, 2007) (plaintiff's own assertion

that he was not hired because of his membership in a protected class was insufficient to establish

discrimination).

   Finally, Plaintiffs again offer data comparing the number of hours they worked with those

for the average white worker.  Again, the statistics do not support an inference of discrimination.

First, Plaintiffs have not broken the data down to show the hours worked by those hired directly

by Contractors and those placed by the Hiring Hall.  Because the hours are aggregate, they

provide no information as to whether individual Contractors provided more hours of work to

certain workers.  Further, because there could be many reasons for the disparity in hours, the statistics are not sufficient to create an inference of discrimination.

In sum, Plaintiffs appear to claim, as they did with respect to the Union, that, because they are members of a protected class and were turned down for employment or laid off, the Contractors must have based their decisions on race.  Such conclusory allegations are insufficient to establish discrimination, however.  Williams-McCoy, 2004 WL 356198, at *8; Bullock, 71 F. Supp. 2d at 487.  Rather, Plaintiffs must show some causal nexus between their minority status and the adverse employment actions they suffered.  Sarullo, 352 F.3d at 797.  They have not done so.  In these circumstances, because Plaintiffs have failed to make out a *prima facie* case of discrimination, I will grant the Contractors' motions for summary judgment.

### B.    Duty of Fair Representation

It is unclear from the pleadings whether Plaintiffs allege that the Union breached its duty to provide fair representation.  In the event that they are raising this claim, it cannot survive summary judgment.

To make out a *prima facie* case that a union violated its duty of fair representation, a plaintiff must show: (1) the employer violated the collective bargaining agreement; (2) the union did not seek to remedy the violation; and (3) the union was motivated by discriminatory animus. Yon v. SEPTA, 2003 WL 22597614, *16 (E.D. Pa. Nov. 4, 2003).

For all the reasons I have already described, Plaintiffs cannot meet any of these criteria. Plaintiffs note that there were jobs from which they were laid off, but it is undisputed that lay-offs are very common in the ironworking industry and do not violate the collective bargaining agreement.  (Dougherty Aff. at ¶ 11.)  Moreover, Plaintiffs offer no evidence showing that the

Union's failure to file formal grievances following these lay-offs was motivated by discriminatory animus.  See Bell v. Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union, 2002 WL 32107218 (W.D. Pa. Aug. 29, 2002) (Plaintiff must show decision not to pursue grievance was arbitrary, discriminatory, or made in bad faith).

In these circumstances, I am compelled to grant the Union's summary judgment motion.

**C.     Retaliation**

It is also unclear whether Plaintiffs allege that the Union retaliated against them for filing an EEOC claim.  Regardless, this claim fails because Plaintiffs did not raise it until well after they proceeded before Judge Green.

Before bringing suit in federal court, an individual alleging discrimination must first exhaust his administrative remedies before the EEOC.  Commc'n Workers of Am. v. New Jersey Dep't of Pers., 282 F.3d 213, 216 (3d Cir. 2002).  Only those claims within the scope of the administrative complaint or investigation may be brought as first exhausted.  Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). Plaintiffs never raised a claim of retaliation until after discovery began before Judge Green. Because this claim was neither included in or suggested by the EEOC charge, Plaintiffs have failed to satisfy the administrative exhaustion requirement.  See Fieni v. Pocopson Home, No. 96-5343, 1997 WL 220280, at *5-6 (E.D. Pa. Apr. 29, 1997) (dismissing retaliation claim where it was not included in EEOC charge).  Accordingly, I will grant Defendants' summary judgment motions as to the retaliation claim.

**D.     Failure to Exhaust Administrative Claims**

Because Plaintiffs withdrew their EEOC charges as to several Contractors, the

Commission did not issue a Right to Sue Letter as to these Defendants.  (Flamm Aff.; Doc. No.

123 Ex. B.)  Plaintiffs thus failed to exhaust their administrative remedies as to these

Contractors.  See Commc'n Workers of Am., 282 F.3d at 216 (3d Cir. 2002) (each plaintiff must

exhaust remedies if action is not a class action).

Plaintiff Franklin failed to exhaust his administrative remedies with respect to Defendants

Roma, Cornell, Delaware Valley, Morris Kreitz, Northwest, and Anvil.  Plaintiff Brundage failed

to exhaust his administrative remedies with respect to Defendants Dellovade, Bensalem, and

Anvil.  Plaintiff Williams failed to exhaust his administrative remedies with respect  to

Defendants Roma, Northwest, and Morris Kreitz.  Accordingly, even if Plaintiffs were able to

satisfy the McDonell Douglas test, summary judgment would be appropriate as to these claims.

### E.      Section 1981 and PHRA Claims

There is no administrative filing requirement under § 1981, Wright v. Phila. Gas Works,

2001 WL 11691078 (E.D.Pa. 2001), and Defendants do not contend that Plaintiffs failed to

satisfy the state administrative exhaustion requirement under the PHRA.  See Burgh v. Borough

of Montrose, 251 F.3d 465 (3d Cir. 2001) (plaintiff must exhaust state administrative remedies

before bringing PHRA claim).

As mentioned above, Plaintiffs Williams alone made out a *prima facie* case of

discrimination.  Williams testified that through the Hiring Hall, he was hired by Roma to work

on the Philadelphia Inquirer Building in 2000.  He was the only black ironworker on the project.

Although "[i]t was going to be a seven to eight month job," Roma laid him off for two weeks

after he had worked only a "[d]ay and a half."  (3/9/07 Williams Dep. at 13, 29.)  The white

supervisor appeared to be self-conscious when he told Williams he was laid off.  (Id. at 14.)

Williams was the only ironworker Roma laid off during this project.  (<u>Id.</u> at 15.)

Under both § 1981 and the PHRA, Williams's testimony establishes a *prima facie* case of discrimination by Roma.  He has met all the <u>McDonell</u> <u>Douglas</u> criteria: 1) he was a member of a protected class; 2) he was qualified to do the work Roma wanted; 3) he alone was laid off; and 4) none of the other ironworkers – all of whom were white – were laid off.  (<u>Compare</u> 3/8/07 Brundage Dep. at 75,79, 80, 82, 86-87; 3/8/07 Franklin Dep. at 11-12, 34, 62, 64, 66.)

Under <u>McDonnell</u> <u>Douglas</u>, the burden shifts to Roma to provide a legitimate reason for laying off Williams.  Roma contends only that Plaintiffs "either did not bring any claim as to Roma Steel, did not seek employment with Roma Steel or by their own admissions were not discriminated against by Roma Steel."  (Doc. No. 114 at 25.)  Plainly these "reasons" –  which have no record support – are not legitimate and cannot justify Roma's alleged treatment of Williams.  The <u>McDonell</u> <u>Douglas</u> test is thus satisfied with respect to Williams's § 1981 and PHRA claims against Roma.

**IV.     CONCLUSION**

With respect to the great bulk of their claims, Plaintiffs have not made out a *prima facie* case of discrimination.  Further, many of these claims would also fail because Plaintiffs did not first exhaust their administrative remedies.

Plaintiff Williams's claim against Roma may be pursued under § 1981 and the PHRA because he has made out a *prima facie* case and Roma has failed to provide a legitimate reason for its alleged actions.  Williams may not pursue this claim under Title VII because he failed to exhaust his administrative remedies against Roma.

Accordingly, I am granting Defendants' Motions for Summary Judgment in part and denying these motions in part.

An appropriate Order follows.

BY THE COURT.

*/s Paul S. Diamond*

_____

Paul S. Diamond, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEONARD K. BRUNDAGE et al**. | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 00-4549** |
| | : | |
| **INTERNATIONAL ASSOCIATION** | : | |
| **OF BRIDGE, STRUCTURAL AND** | : | |
| **ORNAMENTAL IRONWORKERS,** | : | |
| **LOCAL #401 et al.** | : | |

<u>**O R D E R**</u>

AND NOW, this 24th day of October, 2007, it is ORDERED that:

(1) Motions for Summary Judgment from Defendants Union, Cornell, Anvil, Bensalem, Delaware Valley, Dellovade, Morris Kreitz, and Northwest (Doc. No. 108; Doc. No. 109; Doc. No. 110; Doc. No. 111; Doc. No. 112; Doc. No. 113; Doc. No. 115; Doc. No. 118; Doc. No. 145) are **GRANTED**;

(2) Defendant Roma's Motion for Summary Judgment (Doc. No. 114) is **GRANTED** as to Plaintiff Williams's claims brought under 42 U.S.C. § 2000e <u>et seq</u>. and **DENIED** as to Plaintiff Williams's claims brought under § 1981 and the PHRA;

(3) Pending trial motions (Doc. No. 126; Doc. No 128; Doc. No. 144; Doc. No. 145; Doc. No. 148; Doc. No. 169; Doc. No. 170; Doc. No. 171; Doc. No. 173; Doc. No. 175) are **DENIED** as moot;

(4) **JUDGMENT IS ENTERED** in favor of Defendants Union, Cornell, Anvil, Bensalem, Delaware Valley, Dellovade, Morris Kreitz, and Northwest and against Plaintiffs.

IT IS SO ORDERED.

*/s Paul S. Diamond*

_____

Paul S. Diamond, J.